IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| KEILA CROSS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIED WASTE SERVICES OF NORTH AMERICA, LLC, D/B/A REPUBLIC SERVICES,<br><br>Defendant. | CV 21-145-M-SEH<br><br>ORDER |

## INTRODUCTION

Pending before the Court is Defendant Allied Waste Services of North America, LLC, d/b/a Republic Services' (Republic) Converted Motion for Summary Judgment or in the Alternative to Compel Arbitration.[1] A hearing was held January 10, 2023. The motion is denied.

## BACKGROUND

Republic is a Montana solid waste and recycling company.[2] Plaintiff Keila Cross (a.k.a. Keila Starin, hereinafter "Cross") is a citizen of Montana, and since before 2019, has been a residential subscription customer of Republic for waste

---

[1] Docs. 5, 19.
[2] Doc. 1 at 1–2, ¶ 2.

services.[3] Cross initially called Republic and requested curbside recycling services in 2019, and since then has been a residential subscription customer of Republic for both waste and recycling services.[4] Republic provided a recycling bin, and starting in September 2019, added the recycling service charges fee to Cross's quarterly invoices.[5]

Cross filed suit on November 29, 2021, alleging Republic violated the Montana Consumer Protection Act (MCPA) seeking certification of a class action.[6] She claims to have learned that Republic "repeatedly implied it does not actually recycle some of the materials it claims" to recycle.[7] Cross contends she had no knowledge of an Agreement to Arbitrate and Class Action Waiver Clause (Arbitration and Class Action Clause) and did not consent to it.[8] She also asserts she did not see or agree to specific terms of service for recycling services,[9] and denies signing a written contract for recycling services with Republic.[10]

Republic primarily argues in response that Cross consented to the Arbitration and Class Action Clause through quarterly invoices sent to Cross from

---

[3] Doc. 1 at 1, ¶¶ 1, 3(b).
[4] Docs. 6-1 at 2, ¶ 3, 9-1 at 1–2, ¶ 1.
[5] Docs. 6-1 at 2, 9-1 at 2, ¶ 2.
[6] *See* Doc. 1.
[7] Doc. 1 at 4, ¶ 13.
[8] *See* Doc. 6.
[9] Doc. 9 at 2.
[10] *Id.*

2

Republic for the upcoming months of service.[11] Republic also relies on a separate document, "Service Terms for Residential Customers" (Service Terms), that it asserts applies to Cross and to which Cross agreed to.[12] According to Republic, each invoice directs customers to the Service Terms, where the Arbitration and Class Action Clause is found.[13]

The Republic invoice itself contains no arbitration nor class action clause.[14] Any reference to the Arbitration and Class Action Clause requires a customer to reference and be familiar with the final page of the invoice, titled "UNDERSTANDING YOUR BILL," and to reference and be familiar with the third paragraph of that page titled "Understanding Our Rates, Charges and Fees" where Republic's website "RepublicServices.com/Fees" is found.[15]

A customer who visits the "RepublicServices.com/Fees" website must then open the "Service Terms for Residential Customers" hyperlink found in the first paragraph of the webpage.[16] The "Service Terms for Residential Customers" incorporates the Arbitration and Class Action Clause at the bottom of the webpage,[17] which specifies that all non-payment related claims against Republic

---

[11] *See* Doc. 6-1.
[12] *See* Doc. 6.
[13] Doc. 12 at 8.
[14] *See* Doc. 6-1 at 6–11.
[15] *Id.*
[16] *See* Doc. 9-2 at 3.
[17] Doc. 6-1 at 16–17.

by customers are subject to arbitration or small claims court, and that class action lawsuits are prohibited.[18]

Republic contends Cross consented to the Arbitration and Class Action Clause, and therefore, the complaint must be dismissed or arbitration must be compelled.[19] It also argues Cross's class action claim fails because it is prohibited by substantive Montana law, since the MCPA bans class action lawsuits.[20] Cross, in response, argues she never agreed to the Arbitration and Class Action Clause and the MCPA is preempted by Fed. R. Civ. P. 23.[21]

## DISCUSSION

### A. The Court has authority to determine the arbitrability of the case.

"Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion . . . ."[22] The threshold question for the Court is: does a contract to arbitrate exists? Absent an actual, enforceable, and applicable agreement, no legal obligation to arbitrate exists. To determine whether arbitration is required, the court must analyze: (1) whether there is a valid agreement to arbitrate that is an enforceable contract; and (2) whether the arbitration agreement covers the dispute in question.[23]

---

[18] *Id.*
[19] *See* Docs. 6, 12.
[20] Doc. 6 at 15 (citing Mont. Code Ann. § 30-14-133(1)(a)).
[21] *See* Doc. 9.
[22] *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).
[23] 31 Matthew Bender, *Moore's Federal Practice*, § 901.01[4] (3d ed. 2022).

Courts are generally required to resolve the issue of arbitrability: namely, who—an arbitrator or a judge—should decide whether the issue is capable of being settled by arbitration? The Federal Arbitration Act does not provide for an arbitrator to have jurisdiction to rule on jurisdictional and other threshold issues. These issues are delegated to the courts.[24]

Parties nevertheless may agree to submit questions of arbitrability to arbitrators.[25] To do so, there must be "clear and unmistakeable" evidence the parties intended to submit the questions of arbitrability to the arbitrator.[26] "If . . . the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."[27] While parties' explicit incorporation of arbitration rules delegating the issue of arbitrability to the arbitrator can serve as clear and unmistakeable evidence of intent to delegate issues of arbitrability to the arbitrator, Ninth Circuit case law regarding incorporation of arbitration rules generally leaves the issue of

---

[24] *See* 9 U.S.C. § 4 (providing the court may compel arbitration if "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue").
[25] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).
[26] *Id.* at 944.
[27] *Id.* at 943 (emphasis in original).

5

determining arbitrability for consumer contracts and unsophisticated parties with the courts.[28]

Arbitration agreements that are contracts of adhesion, and not negotiated, are not automatically barred, or limited from enforcement.[29] However, adhesive arbitration agreements generally warrant *greater judicial oversight*, due to the contracting parties' inequality of position, than negotiated arbitration agreements between sophisticated parties.[30]

In this case, there is no "clear and unmistakeable" evidence the parties intended to delegate questions of arbitrability to the arbitrator.[31] The bargaining power between the parties was unequal. The Arbitration and Class Action Clause constituted an adhesive consumer agreement. "Clear and unmistakeable" evidence that the parties intended to delegate questions of arbitrability to the arbitrator is not established by the record.

---

[28] *See Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) (limiting the holding to "sophisticated parties to commercial contracts"); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (limiting the holding "to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties'").
[29] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).
[30] 31 Bender, § 902.04[2][d].
[31] Republic argues any dispute concerning the enforcement of the Arbitration and Class Action Clause is subject to arbitration. The Arbitration and Class Action Clause does not explicitly delegate arbitrability issues to an arbitrator, but its language— "The AAA will conduct any arbitration pursuant to this agreement under the Consumer Arbitration Rules in effect at the time the arbitration is commenced" (Doc. 6-1 at 17)—requires analyzing whether the issue of arbitrator arbitrability was incorporated into the clause by the parties.

## B. No valid contract to arbitrate enforceable against Cross and Republic exists.

The validity of arbitration agreements is governed by state law.[32] Allegations of invalidity of the main contract do not necessarily vitiate the arbitral clause.[33] Parties seeking nullification of the arbitral clause must show an alleged problem or deficiency in the arbitral clause itself.[34]

The parties here have no written contract for recycling services that includes an arbitration or class action waiver clause.[35] Cross entered the contract for recycling services via a telephone call. The contract regarding recycling services to be provided by Republic was oral.

The Court must determine whether a separate arbitration and class action waiver clause exists apart from the invoices Republic sent to Cross and that Cross paid.[36] Republic has not demonstrated Cross had knowledge of the Arbitration and Class Action Clause or accepted it. It did not reasonably communicate to Cross the recycling terms or the agreement to arbitrate and class action waiver provisions. The Arbitration and Class Action Clause in this case is invalid.

---

[32] *Kaplan*, 514 U.S. at 944; Mont. Code Ann. § 28-2-102 (characterizing the essential elements of a contract as: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration").
[33] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967).
[34] *Id.*
[35] Republic concedes this by stating the service terms applying to Cross are the ones for "residential customers without a written contract." *See* Doc. 6-1 at 13.
[36] *See Prima Paint Corp*, 388 U.S. at 402–04.

Republic has not shown the absence of a genuine dispute of material fact that Cross affirmatively acknowledged, or had actual or inquiry notice of, the Arbitration and Class Action Clause, as required to survive a summary judgment and compelling arbitration motion. The record supports no conclusion that Cross either knew or should have known the existence of the Arbitration and Class Action Clause. The invoices sent to Cross by Republic did not contain the Arbitration and Class Action Clause and did not adequately direct Cross to it. Republic has not demonstrated that a reasonable person would conclude both Cross and Republic intended to be bound by the Arbitration and Class Action Clause.

Finally, no evidence provided demonstrates Republic adequately put Cross on notice of the change in contract terms when Republic unilaterally included the Arbitration and Class Action Clause in March 2021, over two years after Cross had become a service member of Republic.[37]

### C. The Montana Consumer Protection Act prohibition on class action lawsuits fails to apply to Cross's claim.

The Montana Consumer Protection Act (MCPA) provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.[38] A consumer may not bring a class action

---

[37] *See* Doc. 12 at 9, n. 1; *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1082 (9th Cir. 2020) (holding that for changes in terms to be binding, both parties to the contract, not just the drafting party, must have notice of the change).
[38] Mont. Code Ann. § 30-14-103.

8

lawsuit under the MCPA.[39] Fed. R. Civ. P. 23, however, provides procedures federal courts use in determining whether a plaintiff may bring a class action lawsuit, and conflicts with the MCPA.[40]

The Court, from available precedent, specifically *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*[41] and *CoreCivic, Inc. v. Candide Group, LLC*,[42] concludes that Rule 23 preempts the state law MCPA prohibition on class action lawsuits. The MCPA's prohibition of class action lawsuits does not of itself prohibit Cross's class action claim.

**ORDERED:**

1. Republic's Converted Motion for Summary Judgment or in the Alternative Compel Arbitration[43] is **DENIED**.

2. Republic shall file its answer to Cross's Class Action Complaint[44] on or before **January 26, 2023**.

---

[39] Mont. Code Ann. § 30-14-133(a)(1).
[40] Fed. R. Civ. P. 23.
[41] 559 U.S. 393, 389–407 (2010) (addressing the conflict between Rule 23 and a state statute prohibiting class actions suits and holding, in the plurality decision, with a concurring opinion joining the plurality in part, that Rule 23 preempted a New York state law prohibiting class action in cases seeking penalties and statutory minimum damages).
[42] 46 F.4th 1136, 1141 (9th Cir. 2022) ("Justice Stevens, who wrote a one-justice concurrence, also joined the first part of Justice Scalia's opinion, rendering that small section of Justice Scalia's opinion 'the majority opinion,' and thus clearly binding on [the Ninth Circuit].").
[43] Doc. 5.
[44] Doc. 1.

3. By separate order, the Court will schedule and set a preliminary pretrial conference to consider and establish necessary and appropriate pretrial deadlines.

DATED this 12th day of January, 2023.

*[signature]*
SAM E. HADDON
United States District Judge